SERVE THIS COPY

# COMMONWEALTH OF VIRGINIA



PRINCE WILLIAM CIRCUIT COURT
Civil Division
9311 LEE AVENUE ROOM 314
MANASSAS VA 20110

Summons

To: CORPORATION SERVICE COMPANY
100 SHOCKHOE SLIP FL 2
RICHMOND VA 23219

Case No. 153CL23003043-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, March 27, 2023

Clerk of Court: JACQUELINE C SMITH

by _____
(CLERK/DEPUTY CLERK)

Instructions:   GENERAL TORT

Hearing Official:

Attorney's name:   ZELLMAN, JASON F
4010 UNIVERSITY DRIVE 2ND FL
FAIRFAX VA 22030



EXHIBIT 1

**COVER SHEET FOR FILING CIVIL ACTIONS**
COMMONWEALTH OF VIRGINIA

Case No. ...................................................................
(CLERK'S OFFICE USE ONLY)

Prince William County .......................................... Circuit Court

Jennifer O'Brien _____ v./In re: Consumer Safety Technology, LLC
            PLAINTIFF(S)                                          DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Counterclaim
  [ ] Monetary Damages
  [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
  [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[✓] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
  [ ] ABC Board
  [ ] Board of Zoning
  [ ] Compensation Board
  [ ] DMV License Suspension
  [ ] Employee Grievance Decision
  [ ] Employment Commission
  [ ] Local Government
  [ ] Marine Resources Commission
  [ ] School Board
  [ ] Voter Registration
  [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
  [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
  [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
  [ ] Complaint – Contested*
  [ ] Complaint – Uncontested*
  [ ] Counterclaim/Responsive Pleading
  [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
  [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
  [ ] Guardian/Conservator
  [ ] Standby Guardian/Conservator
  [ ] Custodian/Successor Custodian (UTM/
[ ] Trust (select one)
  [ ] Impress/Declare/Create
  [ ] Reformation
[ ] Will (select one)
  [ ] Construe
  [ ] Contested

**MISCELLANEOUS**
[ ] Amend Death Certificate
[ ] Appointment (select one)
  [ ] Church Trustee
  [ ] Conservator of Peace
  [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
  [ ] Reinstatement pursuant to § 46.2-427
  [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
  [ ] Correct Erroneous State/Local
  [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

Damages in the amount of $ _____ are claimed.

3/24/23
DATE

Jason F. Zellman
PRINT NAME

4010 University Dr., 2nd Floor, Fairfax, VA 22030
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

(703) 277-9704

JZellman@Surovellfirm.com

[ ] PLAINTIFF   [ ] DEFENDANT   [✓] ATTORNEY FOR   [✓] PLAINTIFF   [ ] DEFENDANT

#84999 For JFZ

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault

VIRGINIA:

## IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY
## CIVIL DIVISION

| | |
|---|---|
| **JENNIFER O'BRIEN** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**CONSUMER SAFETY TECHNOLOGY, LLC,** )<br>)<br>SERVE: )<br>CORPORATION SERVICE COMPANY )<br>100 Shockoe Slip Fl 2 )<br>Richmond, VA, 23219 )<br>)<br>Defendant, )<br>) | Case No. CL23-3043 |

### COMPLAINT

The Plaintiff, Jennifer O'Brien ("Ms. O'Brien"), by counsel, hereby states the following in support of her Complaint against the Defendant, Consumer Safety Technology, LLC ("CST").

### PARTIES

1. Ms. O'Brien is a resident of the Commonwealth of Virginia.

2. Defendant is an entity authorized to transact business in Virginia.

3. Ms. O'Brien's primary place of employment was her own residence located in Manassas, Virginia, as a remote worker.

4. This action is brought against Defendant pursuant to the Virginia Values Act codified by VA Code § 2.2-3900 and §§ 2.2-3907.

5. Ms. O'Brien filed a Charge of Discrimination with the Office of the Attorney General Office of Civil Rights ("OCR") alleging violations based on sex discrimination on or about May 26, 2022.

6. After more than one hundred and eighty (180) days had passed, Ms. O'Brien requested a Right to Sue Letter from the OCR.

7. On February 15, 2023, Ms. O'Brien received a Right to Sue Letter from the OCR based on the fact that more than one hundred and eighty (180) days had passed since the original claim with the OCR was filed. The OCR terminated its processing of the charge at this time. See February 15, 2023 Right to Sue Letter attached hereto as Exhibit A.

## Factual Allegations

8. This matter arises from Ms. O'Brien's employment with Defendant.

9. Ms. O'Brien is a female.

10. Ms. O'Brien had worked for Defendant since October 2017 when she was hired as Virginia State Director.

11. During the time of her employment, Ms. O'Brien was an excellent employee who rarely, if ever, needed correcting for her performance.

12. Ms. O'Brien came to know that and was accepting applications.

13. In February 2021, Ms. O'Brien contacted her supervisor regarding a vacant position titled Service Center Director, a position she had previously been offered but declined due to the requirement of relocation from Virginia to Iowa.

14. Ms. O'Brien's supervisor responded by instructing Ms. O'Brien to apply and that the posting was a mere "Human Resources formality" since the previous requirement of relocation to Iowa was being eliminated and the position was being tailored for Ms. O'Brien to fill.

15. In March 2021, Ms. O'Brien applied for the position and had an interview with her supervisor as well as the heads of the Sales, Compliance, and Customer Service Departments, among whom was Jeffrey Peck.

16. Ms. O'Brien noticed that this interview was atypical in that not many questions were asked of her nor did the interviewers seem to have much of a plan for the position.

17. In April 2021, Ms. O'Brien had not received news regarding the Service Center Director position, so she inquired to the Senior Recruiter who informed her that the position was not yet open due to budget concerns but would be available soon.

18. By September 2021, Ms. O'Brien had noticed that Sales Department employee, Jeffrey Peck was assuming many of the job responsibilities of the position she applied and interviewed for.

19. In November 2021, Ms. O'Brien followed up regarding whether the Service Center Director position was going to be launched soon, and again, Ms. O'Brien was informed that the position was not yet open due to budget concerns but would be available soon.

20. A few weeks later in November 2021, Defendant circulated an announcement naming Jeffrey Peck as "Director" regarding leadership of Defendant's Service Centers.

21. Ms. O'Brien observed Mr. Peck's new email signature which named him as "Strategic Partners Director."

22. Ms. O'Brien contacted her supervisor to inquire as to why Mr. Peck had been placed in a position that had such similar responsibilities to that of the Service Center Director and why this new position of Strategic Partners Director had been created when she had been promised it numerous times.

23. Ms. O'Brien's supervisor responded stating that the position of Service Center Director was not filled but would be available soon.

24. In January 2022, Defendant posted the position of Service Center Manager, and Ms. O'Brien's supervisor, Mr. Nathan Erwin, assured her that this posting was a mere "Human Resources formality" since the position was slated to be filled by Ms. O'Brien.

25. A few days later, fellow employee David Montgomery contacted Ms. O'Brien, asked her procedural questions about maintaining service centers, and then informed her that he had been instructed by Jeffrey Peck to apply for the Service Center Manager position.

26. On February 3, 2022, while Ms. O'Brien was on a scheduled vacation, Defendant circulated an announcement that David Montgomery had been appointed to the position of Service Center Manager.

27. Ms. O'Brien was shocked and devastated by this information, so she contacted Human Resources, lodging a complaint based on her supervisor's consistent and blatant misleading conduct and empty promises regarding a promotion.

28. On February 17, 2022, Ms. O'Brien noticed that her access to her company email and other important credentials had been suspended.

29. On March 2, 2022, Ms. O'Brien had a meeting with the Chief Human Resources Officer in which Ms. O'Brien reiterated that she felt discriminated against based on her sex and that she had been misled about this job by her supervisor.

30. The Chief Human Resources Officer quickly informed Ms. O'Brien that a viable option to rectify this would be to take a severance package.

31. On March 4, 2022, Ms. O'Brien had another meeting with the Chief Human Resources Officer who stated that since Ms. O'Brien was uncomfortable continuing to report to her supervisor, she was being given a severance review.

32. Ms. O'Brien filed a Charge of Discrimination with the OCR on February 15, 2023.

33. Ms. O'Brien consistently experienced discrimination in the form of repeated non-selection, false promises, and eventual separation of employment based on her sex.

34. Ms. O'Brien could have effectively executed the professional duties of the roles Mr. Peck and Mr. Montgomery received, as illustrated by Mr. Peck's and Mr. Montgomery's persistent questions to Ms. O'Brien regarding their own job responsibilities.

35. The actions taken by Defendant were taken willfully and wantonly in violation of VA Code § 2.2-3900.

36. Any actions taken or reasons given with respect to Defendant's failure to protect Ms. O'Brien from discrimination and Defendant's failure to remedy this situation are merely pretext.

## COUNT I: VIOLATION OF VA CODE § 2.2-3900

37. Ms. O'Brien incorporates all prior allegations.

38. Ms. O'Brien was subjected to sex-based discrimination in the form of non-selection, false promises for promotion and job offers, and her eventual separation of employment.

39. Pursuant to VA Code § 2.2-3900, "It is the policy of the Commonwealth to… Safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, sexual orientation, gender identity, disability, or military status."

40. During the course of Ms. O'Brien's employment, Defendant selected two male employees to fill both of the job positions she had been promised.

41. During the course of Ms. O'Brien's employment, her male supervisor repeatedly created false narratives and promised her job positions that were eventually given to male employees.

42. The above-mentioned discrimination throughout Ms. O'Brien's employment has interfered with Ms. O'Brien's emotional well-being, ability to earn money, and career prospects.

43. As a result of this discriminatory work environment created by Defendant, Ms. O'Brien has suffered emotional stress and loss of income.

44. Defendant failed to take all necessary and reasonable steps to eliminate sex discrimination from the workplace and prevent it from occurring in the future.

45. As a further and proximate cause of Defendant's violation of VA Code § 2.2-3900 as described above, Ms. O'Brien has been compelled to retain counsel in an effort to protect her rights with respect to work environment and hiring/firing practices maintained by Defendant and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Ms. O'Brien.

**WHEREFORE, the foregoing premises considered, Jennifer O'Brien seeks judgment against the Defendant in an amount that will compensate her for:**

A. Violation of her rights under VA Code § 2.2-3900;

B. Compensatory damages in the amount of $250,000, including lost wages, past and future and/or impairment of power to earn money; physical pain, emotion distress and humiliation, past and future;

C. Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious and/or grossly negligent conduct;

D. A permanent injunction against future acts of discrimination against Ms. O'Brien by the Defendant;

E. Costs expended herein, including reasonable attorneys' fees;

F. Pre-judgment and post-judgment interest; and

G. Any and all other relief to which Ms. O'Brien may be entitled.

**TRIAL BY JURY IS HEREBY DEMANDED**

JENNIFER O'BRIEN
By Counsel

SUROVELL ISAACS & LEVY PLC

By: _____ For JFZ
Jason F. Zellman (VSB #77499)
4010 University Drive, Second Floor
Fairfax, VA 22030
Telephone: 703.277.9704
Facsimile: 703.591.9285
Email: JZellman@SurovellFirm.com
*Counsel for Ms. O'Brien*

# OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
## OFFICE OF CIVIL RIGHTS

## NOTICE OF RIGHT TO FILE A CIVIL ACTION

| | |
|---|---|
| **TO: JENNIFER O'BRIEN**<br>**10944 PENNYCRESS ST.**<br>**MANASSAS, VA 20110**<br><br>☐ ON BEHALF OF AGGRIEVED PERSON WHOSE IDENTITY IS CONFIDENTIAL IN ACCORDANCE WITH 1 VA. ADMIN. CODE § 45-20-30 | **FROM:** Office of the Attorney General<br>Office of Civil Rights<br>202 N. 9th Street<br>Richmond, VA 23219<br>Phone: 804.225.2292 |
| **CHARGE NUMBER(S):**<br>OCR No: 22-N0119<br>EEOC No: 570-2022-01200 | **OCR Representative:**<br>Name: Timothy Wilson<br>Telephone: 804.225.2292 |

### Notice to the Person Aggrieved:

In accordance with the Virginia Human Rights Act (VHRA), this is your Notice of Right to File a Civil Action (Notice) issued for the above-numbered charge and in accordance with Va. Code § 2.2-3907. Pursuant to 1 VAC 45-20-98(C), your lawsuit under the VHRA **must be filed in a state court WITHIN 90 DAYS OF YOUR RECEIPT OF THIS NOTICE** or your right to sue based on this charge in state court will be lost.

*For additional information regarding your rights, please see the back side of this page.*

If your complaint involves employment discrimination and was dual filed by the Office with the U.S. Equal Employment Opportunity Commission (EEOC), the Office will notify the EEOC of the issuance of this Notice. (For <u>any</u> complaints involving federal law claims, the time limit for filing a suit in federal court will be based on federal law and, therefore, may be different.)

☐ More than 180 days have passed since the filing of this complaint.

☐ Less than 180 days have passed since the filing of this complaint, but the Office has determined that it is unlikely that it will be able to complete its administrative processing of the complaint within 180 days from the day the complaint was filed.

☒ The Charging Party has requested this Notice.

☐ The Office is ceasing its processing of this complaint.

☐ The Office will continue to process this complaint.

*If you file a lawsuit based on this complaint, please send us a copy of your court complaint.*

| | |
|---|---|
| **Issued on behalf of the Office of Civil Rights by:**<br>Signature: *[signature]*<br>**Christine Lambrou Johnson, Chief** | **Date Issued: 02/15/2023** |

cc: Consumer Safety Technology LLC
Belin McCormick, P.C.
c/o Kelsey Knowles, Esq.
666 Walnut St., Ste. 2000
Des Moines, IA 50309

**EXHIBIT A**

# OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
# OFFICE OF CIVIL RIGHTS

## Information Related to Filing Suit Under the Laws Enforced
## by the Office of the Attorney General - Office of Civil Rights

This information relates to filing a lawsuit in state court under Virginia law. If you also plan to sue claiming violations of federal law, please be aware that time limits may be shorter and other provisions of federal law may be different than those described below. *If this charge was dual filed with the U.S. Equal Employment Opportunity Commission (EEOC), the EEOC will issue its separate Notice of Right to Sue to the Charging Party for the relevant federal law claims upon receiving notification of the Office's dismissal of this charge pursuant to its issuance of this Notice.*

### PRIVATE SUIT RIGHTS – VIRGINIA HUMAN RIGHTS ACT, VA. CODE § 2.2-3900 et. seq.

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice. Therefore, you should keep a record of the date you receive this Notice.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell your attorney the date on which you received this Notice.

Your lawsuit may be filed in the appropriate Virginia general district or circuit court or, if federal law claims are involved, in the U.S. District Court of competent jurisdiction. Whether you file in a Virginia or federal court is a matter for you to decide or in consultation with your attorney, if you have one. If you elect to file your lawsuit in federal court, you should make sure to share your Notice of Right to Sue from the EEOC with your attorney as well as this Notice, as different time limits may apply. Your lawsuit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.

### ATTORNEY REFERRAL AND ASSISTANCE

If you need assistance finding an attorney or have any questions about your legal rights, you may wish to contact the Virginia Lawyer Referral Service by telephone at (800) 552-7977 or by email at lawyerreferral@vsb.org, or a local legal aid service. If you need a copy of the information in this Office's file regarding your complaint, please request it promptly in writing and provide your OCR case number as shown on your Notice. Although the Office destroys case files after a certain time, all investigative files are kept for at least one year after our last action on the case. Therefore, if you file a lawsuit and want to obtain a copy of the investigative file, **please submit your written request within one year of this Notice.**

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

OCR-Notice 09-16-2022

Code of Virginia
Title 2.2. Administration of Government
Chapter 39. Virginia Human Rights Act

# Chapter 39. Virginia Human Rights Act.

### § 2.2-3900. Short title; declaration of policy.

A. This chapter shall be known and cited as the Virginia Human Rights Act.

B. It is the policy of the Commonwealth to:

1. Safeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, sexual orientation, gender identity, military status, or disability in places of public accommodation, including educational institutions and in real estate transactions;

2. Safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, sexual orientation, gender identity, disability, or military status;

3. Preserve the public safety, health, and general welfare;

4. Further the interests, rights, and privileges of individuals within the Commonwealth; and

5. Protect citizens of the Commonwealth against unfounded charges of unlawful discrimination.

1987, c. 581, §§ 2.1-714, 2.1-715; 1997, c. 404; 2001, c. 844; 2020, cc. 1137, 1140; 2021, Sp. Sess. I, cc. 477, 478.

### § 2.2-3901. Definitions.

A. The terms "because of sex or gender" or "on the basis of sex or gender" or terms of similar import when used in reference to discrimination in the Code and acts of the General Assembly include because of or on the basis of pregnancy, childbirth, or related medical conditions, including lactation. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all purposes as persons not so affected but similar in their abilities or disabilities.

B. The term "gender identity," when used in reference to discrimination in the Code and acts of the General Assembly, means the gender-related identity, appearance, or other gender-related characteristics of an individual, with or without regard to the individual's designated sex at birth.

C. The term "sexual orientation," when used in reference to discrimination in the Code and acts of the General Assembly, means person's actual or perceived heterosexuality, bisexuality, or homosexuality.

D. The terms "because of race" or "on the basis of race" or terms of similar import when used in reference to discrimination in the Code and acts of the General Assembly include because of or on the basis of traits historically associated with race, including hair texture, hair type, and protective hairstyles such as braids, locks, and twists.

E. As used in this chapter, unless the context requires a different meaning:

"Lactation" means a condition that may result in the feeding of a child directly from the breast or the expressing of milk from the breast.

"Military status" means status as (i) a member of the uniformed forces, as defined in 10 U.S.C. § 101(a)(5), of the United States or reserve component thereof named under 10 U.S.C. § 10101, (ii) a veteran as defined in 38 U.S.C. § 101(2), or (iii) a dependent as defined in 50 U.S.C. § 3911(4) except that the support provided by the service member to the individual shall have been provided 180 days immediately preceding an alleged action that if proven true would constitute unlawful discrimination under this section instead of 180 days immediately preceding an application for relief under 50 U.S.C. Chapter 50.

1987, c. 581, § 2.1-716; 1991, c. 457; 1997, c. 404; 2001, c. 844; 2005, c. 839; 2020, cc. 107, 152, 1137, 1138, 1139, 1140; 2021, Sp. Sess. I, cc. 477, 478.

### § 2.2-3902. Construction of chapter; other programs to aid persons with disabilities, minors, and the elderly.

Code of Virginia Code - Chapter 39. Virginia Human Rights Act

"Domestic worker" means an individual who is compensated directly or indirectly for the performance of services of a household nature performed in or about a private home, including services performed by individuals such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. "Domestic worker" does not include (i) a family member, friend, or neighbor of a child, or a parent of a child, who provides child care in the child's home; (ii) any child day program as defined in § 22.1-289.02 or an individual who is an employee of a child day program; or (iii) any employee employed o a casual basis in domestic service employment to provide companionship services for individuals who, because of age or infirmity are unable to care for themselves.

"Employee" means an individual employed by an employer.

"Employer" means a person employing (i) 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person or (ii) one or more domestic workers. However, (a) for purpose: of unlawful discharge under subdivision B 1 on the basis of race, color, religion, national origin, military status, sex, sexual orientation, gender identity, marital status, disability, pregnancy, or childbirth or related medical conditions including lactation, "employer" means any person employing more than five persons or one or more domestic workers and (b) for purposes of unlawfu discharge under subdivision B 1 on the basis of age, "employer" means any employer employing more than five but fewer than 20 persons.

"Employment agency" means any person, or an agent of such person, regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer.

"Joint apprenticeship committee" means the same as that term is defined in § 40.1-120.

"Labor organization" means an organization engaged in an industry, or an agent of such organization, that exists for the purpose, in whole or in part, of dealing with employers on behalf of employees concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment. "Labor organization" includes employee representation committees, groups, or associations in which employees participate.

"Lactation" means a condition that may result in the feeding of a child directly from the breast or the expressing of milk from the breast.

B. It is an unlawful discriminatory practice for:

1. An employer to:

a. Fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions including lactation, age, military status, disability, or national origin; or

b. Limit, segregate, or classify employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect an individual's status as an employee, because of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions including lactation, age, military status, disability, or national origin.

2. An employment agency to:

a. Fail or refuse to refer for employment, or otherwise discriminate against, any individual because of such individual's race, color religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status, disability, or national origin; or

b. Classify or refer for employment any individual on the basis of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status, disability, or national origin.

3. A labor organization to:

a. Exclude or expel from its membership, or otherwise discriminate against, any individual because of such individual's race, color religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status, disability, or national origin;

Code of Virginia Code - Chapter 39. Virginia Human Rights Act

sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status disability, or national origin;

5. For an employer to provide reasonable accommodations related to disability, pregnancy, childbirth or related medical conditions, and lactation, when such accommodations are requested by the employee; or

6. For an employer to condition employment or premises access based upon citizenship where the employer is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant or administered under any statute or regulation of the federal government or any executive order of the President of the United States.

D. Nothing in this chapter shall be construed to require any employer, employment agency, labor organization, or joint apprenticeship committee to grant preferential treatment to any individual or to any group because of such individual's or group race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status, disability, or national origin on account of an imbalance that may exist with respect to the total number or percentage of persons of any race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status, disability, or national origin employed by any employer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, admitted to or employed in any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status, disability, or national origin in any community.

E. The provisions of this section shall not apply to the employment of individuals of a particular religion by a religious corporation, association, educational institution, or society to perform work associated with its activities.

2020, c. 1140; 2021, Sp. Sess. I, cc. 12, 477, 478, 506, 513.

§ 2.2-3905.1. Reasonable accommodations for persons with disabilities; unlawful discriminatory practice; notice of rights.

A. As used in this section:

"Employer" means any person, or agent of such person, employing more than five employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

"Person with a disability" means the term as defined in § 51.5-40.1.

"Physical impairment" means the term as defined in § 51.5-40.1.

"Mental impairment" means the term as defined in § 51.5-40.1.

"Otherwise qualified person with a disability" means the term as defined in subsection A of § 51.5-41.

B. It shall be an unlawful discriminatory practice for an employer to:

1. Refuse to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular job, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer. In determining whether an accommodation would constitute an undue hardship upon the employer, the following shall be considered:

a. Hardship on the conduct of the employer's business, considering the nature of the employer's operation, including compositio and structure of the employer's workforce;

b. Size of the facility where employment occurs;

c. The nature and cost of the accommodations needed, taking into account alternative sources of funding or technical assistance included under § 51.5-173;

d. The possibility that the same accommodations may be used by other prospective employees; and

e. Safety and health considerations of the person with a disability, other employees, and the public.

2. Take adverse action against an employee who requests or uses a reasonable accommodation pursuant to this section.

D. Once a charge has been issued, the Office shall conduct an investigation sufficient to determine whether there is reasonable cause to believe the alleged discrimination occurred. Such charge shall be the subject of a report made by the Office. The report shall be a confidential document subject to review by the Attorney General, authorized Office employees, and the parties. The review shall state whether there is reasonable cause to believe the alleged unlawful discrimination has been committed.

E. If the report on a charge of discrimination concludes that there is no reasonable cause to believe the alleged unlawful discrimination has been committed, the charge shall be dismissed and the complainant shall be given notice of his right to commence a civil action.

F. If the report on a charge of discrimination concludes that there is reasonable cause to believe the alleged unlawful discrimination has been committed, the complainant and respondent shall be notified of such determination and the Office shall immediately endeavor to eliminate any alleged unlawful discriminatory practice by informal methods such as conference, conciliation, and persuasion. When the Office determines that further endeavor to settle a complaint by conference, conciliation, and persuasion is unworkable and should be bypassed, the Office shall issue a notice that the case has been closed and the complainant shall be given notice of his right to commence a civil action.

G. At any time after a notice of charge of discrimination is issued, the Office or complainant may petition the appropriate court fo temporary relief, pending final determination of the proceedings under this section, including an order or judgment restraining the respondent from doing or causing any act that would render ineffectual an order that a court may enter with respect to the complainant. Whether it is brought by the Office or by the complainant, the petition shall contain a certification by the Office tha the particular matter presents exceptional circumstances in which irreparable injury will result from unlawful discrimination in the absence of temporary relief.

H. Upon receipt of a written request from the complainant, the Office shall promptly issue a notice of the right to file a civil actior to the complainant after (i) 180 days have passed from the date the complaint was filed or (ii) the Office determines that it will be unable to complete its investigation within 180 days from the date the complaint was filed.

2020, c. 1140; 2021, Sp. Sess. I, c. 196.

§ 2.2-3908. Civil actions by private parties.
A. An aggrieved person who has been provided a notice of his right to file a civil action pursuant to § 2.2-3907 may commence a timely civil action in an appropriate general district or circuit court having jurisdiction over the person who allegedly unlawfully discriminated against such person in violation of this chapter.

B. If the court or jury finds that unlawful discrimination has occurred, the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate.

C. Upon timely application, the Attorney General may intervene in such civil action if the Attorney General certifies that the case is of general public importance. Upon intervention, the Attorney General may obtain such relief as would be available to a private party under subsection B.

2020, c. 1140.

§ 2.2-3909. Causes of action for failure to provide reasonable accommodation for known limitations related to pregnancy, childbirth, or related medical conditions.
A. As used in this section:

"Employer" means any person, or agent of such person, employing five or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

"Lactation" means lactation as defined in § 2.2-3905.

"Reasonable accommodation" includes more frequent or longer bathroom breaks, breaks to express breast milk, access to a privat location other than a bathroom for the expression of breast milk, acquisition or modification of equipment or access to or modification of employee seating, a temporary transfer to a less strenuous or hazardous position, assistance with manual labor, job restructuring, a modified work schedule, light duty assignments, and leave to recover from childbirth.

"Related medical conditions" includes lactation.

B. No employer shall:

Code of Virginia Code - Chapter 39. Virginia Human Rights Act

